The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated please. All right, the first case we'll hear today is the United States v. Sutherland and Donner, Ms. Donner, we'll hear from you. Good morning, Your Honors. The District Court erred when it granted the government's motion to dismiss the Section 2255 motion and the petition for quorum nobis without first conducting an evidentiary hearing. Here, the District Court made findings of fact that trial counsel's failure to call witnesses were the product of a reasonable strategic decision without an evidentiary hearing or even an affidavit of trial counsel. Yet, the District Court was required, pursuant to Section 2255, paragraph 2, to hold an evidentiary hearing because the 2255 motion asserted facially valid claims and the record did not conclusively... Let me ask you, the claims were ineffective assistance of counsel? The allegations in the 2255 and the petition for quorum nobis... No, no, stick with the 2255. The allegation was ineffective assistance of counsel. Yes, Your Honor. And the claim was twofold, that counsel didn't call Phillips and what was the second one? Did not call tax and accounting expert. Right, right, right. Yes, Your Honor. Okay, now both of those issues have nothing to do with the obstruction, do they? Yes, they both do, Your Honor. I thought the obstruction was based on forgery. The government argued that the loans were a sham and because the loans were a sham... So, how would the addition of the testimony of the brother or of a tax expert yet to be identified, what possible effect would that have on the fraudulent documents? Keeping in mind, we've already found that, so it would seem like the law of the case would apply here. Your Honor, the issue before, Your Honors, on the direct appeal was whether or not trial counsel... I'm sorry, the government misrepresented evidence at closing and there were multiple reasons why it was alleged that the government misrepresented evidence. This court did not determine what the evidence was. It determined that the argument of government counsel was just that argument and that the government, like any lawyer in a trial, is entitled to argue their theory of the case from the evidence. How about the finding from our prior decision that says these related documents were bogus and backdated? I don't see how you'd get around that. Respectfully, that was not the issue in the case. No, but that's what we found. That's the issue right under the 2255, that's obstruction, and you're saying counsel was ineffective for failing to call the brother, Phillip, and for failing to allow the calling of a tax expert. Neither of those would have any bearing on these fraudulent documents. In other words, you're arguing that they should have had a hearing on the 2255, and I'm just suggesting, on what's the issue? What do you want a hearing about? The evidence that was presented by the government at trial and what your honors relied upon, assuming that you did rely upon evidence in order to render the statements in the ruling, all of that was improper because the trial counsel was ineffective. And they didn't present evidence at trial. But that's too general. Your argument is that counsel was ineffective in failing to call brother, Phillip. Correct. And ineffective for allowing the tax expert to testify. Correct. I just don't get it. I mean, it's like we're in two different houses. We established that. I mean, your honors are relying on the facts as they were presented at trial, and what we're saying is that those facts needed to be rebutted and could have been rebutted. By those two witnesses. Those two witnesses didn't have an opinion as to whether there was a forgery on those documents or they're backdated. That's correct. But the government's argument when they were making the arguments, and especially in closing, regarding the fraudulent nature of the loan documents, what they argued was that the loans were a sham. And the reason why we know, and I'm quoting, we know the loans were a sham was because the books and records of Mr. Sutherland were not accurate. No, they're a sham because they were forged and created backdated. Respectfully, your honor, there was not evidence, and I don't even think the government will dispute that they could establish that the documents were backdated. That was the finding, but my whole point isn't whether that finding is correct. My whole point is that the introduction allowing Phillip to testify and the tax would not play on that issue. We think it would. And the reason why we think it would is because the government argued, the government didn't have a witness to testify that the loan documents were backdated. They didn't have any metadata to establish. You see what you're doing? You're just arguing the prior case. You're not arguing your ineffective assistance of counsel. Well, but the point is that the testimony that we proffered was that Phillip. What would have Phillip said? Would he say those documents were not forgeries or not shams? He would testify that he understood that the STS transfers, which are the fund subject in dispute, that those were, he understood that those were loans. And he made a mistake in the books and records of Mr. Sutherland. And therefore, because there were mistakes in the books and records, that's why there were mistakes. And the government argued that we know the loan documents are shams because the books and records were inaccurate. And they also looked to the four corners of the loan documents, but they did not have a witness to testify that the loan documents were forged or that the loan documents were created before the grand jury subpoena or before they provided those documents to the government. I'd like to go to the argument regarding whether the district court erred in granting an evidentiary hearing, because that's the issue that your honors identified. One of the issues was, did the district court err in denying or not providing for an evidentiary hearing? And the record was simply devoid of counsel strategy, which the district court made determinations about trial counsel strategy without having an evidentiary hearing. In U.S. v. Presley, this court held that an evidentiary hearing was required on the 2255 motion. Well, the court concluded that it would then have to let the testimony of Mary in, right? And Mary was a real problem for the defense. That was not... That's what the court said, right? That's what the government said. The court said, the district court found that providing Phillip's testimony would have allowed for impeachment of him from his grand jury testimony. But there literally was no statement either by the district court or the government that proffered from the grand jury testimony that would have been inconsistent with the proffer here under the 2255 and the petition for quorum nobis. So that was speculation on behalf of the district court. And all of the other reasons why the district court and the government are advising your honors that the strategy was reasonable are all speculation by the district court and the government. And that is not permissible. The district court has to hold a hearing in order to determine whether or not trial counsel's strategy was reasonable. And I would point out in this case that with respect to Phillip, Phillip was on the witness list. So pre-trial, trial counsel had the strategy of putting Phillip on the stand. During the trial... Use that information against you because the court said Phillip was on the list and the decision was made by counsel not to put Phillip on, which would be a strategic decision. And there were a lot of reasons to support that, the court noted. Phillip was listed on the witness list. He was prepped for trial. And trial counsel advised him and he was at the courthouse waiting to testify. But he was not called. We don't know whether the... Wouldn't that be indicative of the fact that the lawyer made a judgment call as opposed to just oversight? There's no oversight there. He was on the list. He was ready to be called. And counsel decided not to. Isn't that a strategic decision? I think it's all speculation. And that's not what either the district court should be doing. So you think the attorney actually sort of just forgot that he had this witness out there and failed to put him on? What's interesting is you would think that if it was that simple, then the government would have provided an affidavit of trial counsel where they provided all of the reasons why, all of these good reasons that supposedly are out there. This is your burden. We're talking about... You want a hearing. And you just took up the issue of whether not calling Phillip was strategic. And my question to you now is if Phillip was on the witness list, he was there ready to testify, and counsel decided not to call him, that clearly was a deliberate decision. Unless you're arguing he just happened to forget he's out there. The burdens actually are that the district court... To answer my question, was that a correct observation about what the attorney was facing? He made a decision. We don't know whether or not... Just because he made a decision doesn't make it a strategic decision that's reasonable. And the standard is whether or not the strategy was reasonable under all of the circumstances. And we don't know what the strategy was. So we're all speculating right now. You only have a little amount of time left. Do you want to say anything about the Coram Novus petition? I think that the issues that we're discussing with respect to the 2255 are the same regarding the Coram Novus petition. Well, under Coram Novus you have a substantially higher burden than you do under 2255. In this particular case, because the district court granted the government's motion to dismiss, most of the standards are in Mr. Sutherland's favor. So all of the facts need to be looked at in most favorable to Mr. Sutherland. All of the facts alleged in the petition for Coram Novus... Well, the first requirement of the Coram Novus is that you show that you could not have done it with any other remedy. That's the open gate issue. The question is, why wasn't it raised on your 2255? Well, the reason why it wasn't... Both of them were raised at exactly the same time. And the reason why it wasn't raised earlier is because the 2255 issues had not ripened. And as we discussed in detail in our pleadings, the timeliness of the petition for Coram Novus is not really at issue. And it's sort of a sideshow by the government. Well, one of the required elements of Coram Novus is that you have to show that you could not reasonably have raised this earlier. And here, you knew a trial. Philip wasn't called. You knew there wasn't a tax part at the guilt or innocence stage. And you knew that for years before you filed the Coram Novus. And I don't see anything in your briefing that explains how you meet that element of a Coram Novus petition. Had we raised these issues before, the government would certainly be arguing that it was premature and that we had our rights to appeal. Well, people file 2255s all the time and stay them pending the outcome of other proceedings. There was no deadline to file the petition for Coram Novus. And there's no prejudice to the government. One of the elements that the government has to establish is prejudice. All right. Well, I don't want to belabor this for too long. Tell me very succinctly, how do you meet the element of Coram Novus that you could not have brought this earlier? I mean, that's an element you have to prove. Again, there's no deadline. So the question is, when was the deadline for the filing? So could not have brought it earlier than when. It's earlier than when. There's no when because there was no deadline. Counselor, isn't your response that that's a factual question and the district court didn't deal with that at all? And it should be in the first instance the district court should deal with that. And wouldn't that be your response? And now you've been put to good questions, but it's not for you. It's for facts. Right? Yours is argument. So wouldn't your response be that you haven't had a chance to do that because the district court didn't deal with it at all? That's correct. And it wasn't one of the issues that your honors identified as an issue before us. And the district court did not deal with it. So I agree. Well, you can't deal with facts right here before us anyway because what you say is argument. But you didn't have an opportunity because the court didn't deal with it at all. So we normally say we don't deal with it as an appellate court. Factual questions in the first instance. We send those back to the district court. I think that would be your response. But go ahead. I think I'm ‑‑ am I over my time? You are, but I'm asking you a question. I haven't asked you any questions. Okay. Yes, your honors. So if the lead judge, I'm just going to finish this a little bit. Going back to the other question about in terms of the question of burden, when there's an issue of ineffective assistance of a council and you haven't had a hearing, aren't the facts, the inferences to be drawn in your favor? On the Pressley, that's what you should say. I would have cited Pressley when those questions were put there. But did the district court, did the attorney do that? Yes, I did. Did the attorney do that? Well, we don't know because we didn't have a chance for a hearing. There are many reasons. You could call people. You could call a person there. They end up sitting in the box to be called. But why you didn't call them, I don't know why they didn't call them. We don't know because there hasn't been a question. But the inferences can't be drawn against you and say, well, don't we have to assume that it was a strategy not to do it, that he just forgot them? But I'm just saying, wouldn't that be your response on the Pressley? Yes, if I didn't make that clear in my argument, absolutely, positively, that is our argument that the district court made findings of fact when it had no facts before it. That's all I have. Thank you. Thank you. You have some rebuttal. We'll hear from Ms. Greenoff. May it please the Court. Elizabeth Greenoff on behalf of the United States. This Court should affirm the district court's decision dismissing both the motion to vacate the obstruction count and the petition for quorum novus dismissing the false tax return counts. The evidence here of obstruction was really overwhelming. When you look at the loan documents that were provided, there were six of them purporting to grant a 20% interest in any future sale of Mr. Sutherland's companies. That would, of course, be over 100%. There were efforts, you see, to try to show that they were going to be repaid, and those showed the backdated documents that the Court mentioned in its original decision on appeal. Opposing counsel says that Phillip's testimony about the bookkeeping and the proffer of a tax expert on relative income and deductions are what makes their case. My question is, do you see that as rebutting the prior finding by this Court that these documents were fraudulent? No, Your Honor, I don't, because nothing that they put in their petition that they allege that Phillip or the tax expert would have testified to had any direct bearing on the loan documents. The fact that STS's records, that's purportedly where the loans came from, did not reflect any loan balances. It's particularly telling because Mr. Sutherland's brother had nothing to do with the records for those books. In order to be a bona fide loan, in order to show that, he needed to show both that the lender intended to lend the money and seek enforcement, and that the borrower intended to repay that loan, and there's absolutely no evidence of that here. The documents that were submitted to purportedly show some sort of repayment, most of them were not signed by Stewart, who was his sister allegedly in charge of STS, and they referred to future dates that hadn't taken place, that they were backdated documents. So the evidence was overwhelming that this was obstruction, and the tax testimony would not have been helpful at all, because that would have confirmed the government's position that he had underreported his taxes, even taking the line of credit information that he says, well, that shouldn't have counted, and we disagree with that. There still was a million dollars that was not reported, and his attempt to bring in different business deductions that were all cash payments, that would not have helped the case in terms of showing what his intent was. The scale of the misrepresentations was just overwhelming, and that would obviously support the government's position in terms of his intent and his knowledge. So I don't think that either the testimony of Phillip or of a tax attorney would have been helpful on the obstruction count. Is the burden on you in terms of, how do we look at this in terms of review, when you don't have a hearing on ineffective assistance of counsel? So when there is no hearing, you do take the inferences in support of the defendant. All inferences in favor of the movement under Presley, right? So all inferences. As to factual questions, right? So for factual questions, yes. Yes. And then the factual question is whether or not, in fact, these were loans. Isn't that a factual question? Whether they were loans, sure. So you want us to take all inferences in your favor, because you said, well, it couldn't have been. That's the problem. We don't know why counsel didn't present a different case, because you didn't have a hearing. I mean, it seems rather simple to have a hearing normally when you have a situation where a lawyer is in a very complex case. Do you agree? It is a complex case, yes. Right. So, for example, do you know who prepared the documents? Was that clear at trial, who prepared them? Was it clear in terms of evidence? Not in your mind. I think there's certainly an inference. Right. There was no evidence as to who exactly prepared them, correct? Yes or no? Correct. There is an affidavit purportedly from Stewart saying these are the loan documents. Oh, so that's a fact. Then the inference here would be drawn at this point. Why didn't counsel? In other words, so why do you think that's not a factual question then in terms of whether or not you're saying, well, clearly. Was this a bench trial? No, it was not. It was a jury trial. So you don't know what a jury would have been impressed with. The question, though, given the overwhelming evidence, that goes to the reasonable probability of surety. Overwhelming is a description. It's not fact. When you say overwhelmed, the government thinks everything, especially the federal prosecution, is overwhelming because they would say we don't bring cases unless they're overwhelming. So we can't be overwhelmed by your description of overwhelming. So what I'm saying is that it is a question of fact that's left for a jury to determine and for counsel to be effective in putting evidence on. Do you agree with that? At the original trial, sure. Yeah, yeah. My position was nothing to do with those facts. They were found by the jury. Your argument I thought you made, I'm not sure what your answers are saying now, but your argument was that the ineffective assistance of counsel alleged now is the failure to call Philip in the tax and that that had nothing to do with the obstruction. Correct. Therefore, as a matter of law, it leads to nothing. There's no question of fact on that. That's just they were irrelevant. Right. And where we're at here is there is when you're dealing with an ineffective assistance of counsel claim, there is a presumption that strategic decisions. I'm not talking about the strategic decisions. I'm talking about the fact that they're being called would have contributed nothing to the obstruction case in either direction. Okay. Isn't that what you argued? I agree that it would not have made any difference. But you don't know that. That testimony is fluent. I mean, there's no way you could say I know exactly what he would have said and I know exactly what the jury I would have felt it. I mean, you could have an opinion. That's what you're giving Judge Nehemiah is an opinion, but it's not your opinion that we're going to adjudicate this case on. We're adjudicating on the facts. The world construes by its wit, but we must construe by the law. And not just what you think it would have been. That's what you give a hearing for. If the lawyer was here to say, in the record, I did this because of that. I called this person because it would not have helped my case. But now you're left to all these evidence that's drawn on your part. Well, it wouldn't have helped at all. I mean, I think most prosecutors would probably say that. Two points, Your Honor. Yes. We do know what the testimony would have been had he called Philip at trial, because that is what is in his motion to vacate. And you have to assume that those are the facts he would have presented, not something else. Maybe he would come up with that in evidence or hearing, but those particular facts. That's the heightened burden of pleading under 2255. But he was the bookkeeper for the company. And so it's not when you say bookkeeper, that's like saying he would have testified in things related to being the bookkeeper. That's pretty broad. I mean, I used to be a tax lawyer a long time ago. I'm old. I used to be a tax lawyer when I was in Detroit practicing law. But what I'm saying is that he was the bookkeeper in making these entries as to what is income and, you know, for corporate income, what are property, whether the question of whether or not there was write-offs and those kind of things. And, you know, so it wouldn't best be contained. Well, look, you're just here for that. No. They're saying that the broader context of what these are. He would also say that he made some mistakes as to not putting them in the right bin or classifying them right. They should have been. Am I correct? Yes. Yeah, a lot of things. It's not just you can pigeonhole and say, oh, this is all what would have happened. It's not like he just had one assignment. Do you agree when you're the bookkeeper of a company, you have broad access to a lot of transactions to explain how sloppy they were and how it's my fault is a mere copper testimony he would have given. Right. But he also would have testified that he provided a QuickBooks summary to Sutherland, his brother, Patrick, every day, every morning, every weekday morning with the printout of those profits and losses and everything. We have to keep in mind that Sutherland was a numbers man. He had a degree in math and an advanced degree, a master's degree in actuarial science. So he had a broad understanding of the financial areas. And for him to have gotten those books and numbers every morning and not to have known that there was an issue is honestly. But this would have been your argument. Fair enough. But you just can't say I'm fighting a one-armed person and say I won because I'm two-fisted. You're always two-fisted if you don't have ineffective counsel and you have an advantage. That's the whole point. I'm sure you would have argued it, and you should. Well, if you read the trial transcript in particular, the cross-examination that was done by Mr. Sutherland's four retained counsel, one of whom is actually the former federal defender for the Western District of New York, you will see as the district court noted in its decision, and it noted below before this was even brought, that he had tremendous legal counsel, that these attorneys knew those transactions inside and out. And it was obvious from the record that there was a decision made not to present the tax expert testimony at trial because the amount of loss wasn't relevant to trial. It was relevant to sentencing. He was worried, let me see if I'm going to be convicted or not, and then we'll deal with that at sentencing. But when they were dealing with it at trial, it was better to just show, and there was testimony, there was already testimony in the record, as they've admitted, that Philip prepared the books and that they were messy, that he didn't accept as to Innovation Partners, the one company that Sutherland had that required an independent audit. So for purposes of the 2255, if there's no evidence proffered, no witness proffered that affects the prior findings of fraud and forgery, why would we discuss at all whether or not there was a strategic decision? I'm sorry, can you repeat that? That's sort of what we've been arguing about all morning. On the 2255, if there's no proffer of evidence that we would have shown at an evidentiary hearing, this, this, and this, to show it's not fraudulent, it's not a forgery, you don't have any of that, which does not appear in this case, then why would we deal at all with the strategic decision of counsel argument? I don't think you have to. And I think when we're talking about a strategic decision, it's important to remember that there's a presumption. The Supreme Court has cautioned. I keep going back to it. The question to you is, you're not recognizing it. I'm sort of wondering about this. In other words, this is a 2255 on the obstruction case. Correct. It's not on the tax case. And it's not on the keeping sloppy documents or whether they're loans or not. It's on the obstruction case where the jury found that it was a sham documents. Yes. All right. Now, on that, Philip can't contribute a thing one way or the other, and neither can the tax lawyer. I agree with that, Your Honor. Well, why doesn't that begin and end the 2255 issue? I think it does. And that's what the district court found. You're not saying so. You keep talking about the strategic stuff. I'm sorry. No. I think that's what the district court found. It looked at the allegations and it said, you have not shown anything relevant to this obstruction count. Their argument is that, yes, it goes to intent, but I think we fully heard that. Counsel, I would pick up on what Judge Niemeyer asked you about sham. He said that the jury found that it was sham documents. That's, yes. What documents were sham? Well, the ones that were charged for the obstruction count were the loan documents. The loan documents. Correct. And on your case, who prepared them? We don't know. We know they were submitted by. I know. That's the problem. You don't know. And that's the whole problem of this case. We're trying to find out what counsel did. The question is ineffectiveness. It wasn't just, well, it was well-established that these were sham and the jury found sham. Well, you can find things if there's no counter to them, perhaps. If there's nothing put on to give a different light to it, that's why normally you have a hearing on it. Particularly in a complex case like this when counsel is, at least that's their papers, were ineffective on matters. And you can't tell me who. Otherwise, if you had said it's no question they found that this sham document was presented by one person, and you can't tell us today in terms of the facts of this case who did the documents. They do not argue that they were not sham documents. No, I'm asking you in terms of who prepared the sham document. You say you don't know, right? I do not know. Okay, and when you say you do not know, the record did not indicate that to a juror, correct? The record did. Well, you would know if it did. That's why you don't know because it wasn't, right? Well, what we have are Patrick Sutherland's signature on the documents. We have Orderly Beverly Stewart's signature. We have shown through the documents when she was working as a cook at the Best Western in Cody, Wyoming, when she submitted those documents, her signature was completely different. So we do have that evidence, which was strong evidence that they were prepared by Mr. Sutherland. And he's the one who submitted them through his attorney asking for the U.S. Attorney's Office and the Grand Jury to decline prosecution. The 2255 doesn't try to undo that based on factual questions. It's trying to undo that because the lawyer didn't call Philip or the tax lawyer. And Philip, we do know what he's going to testify to, and they have the burden of proffering what that's going to show. And that has nothing to do with the preparation of Beverly's company. He was not the bookkeeper of Beverly's company. No. If there are no further questions, I can briefly address the quorum notice. As you pointed out, in order to obtain relief under that, you would have to show that valid reasons exist for not bringing his claim earlier. They have waived that by failing to present any valid reasons for that decision. And as the district court found, at best, what Sutherland could have showed was that maybe he owed less money, but he still owed a lot of money. And so that's not the basis for granting quorum notice relief. We would ask that the court affirm the district court's decision. All right. Thank you. All right. Ms. Donner? Yes. Thank you. I think the point is that how can we know what would have been, what would have affected the jury, and what would have been rebuttal to the arguments of the government without having an evidentiary hearing. We're all speculating, and we're looking at a cold record. Look, the problem in these arguments is the inability to focus on the particular. And in this case, you brought a 2255 based on the ineffective assistance of counsel. And you alleged in your 2255 that counsel was ineffective by failing to call Philip and the tax lawyer. And the question on the 2255 is how does your proffer of what they would say relate to the obstruction? Yes, Your Honor. All right. There's no question about what those two would testify to. We know what they would testify to. So the question is how do you relate Philip's testimony and the tax lawyer's or tax accountant's testimony to the obstruction count? We did allege in our 2255 and in the papers, especially in the reply, that at trial the government argued at closing that the loan documents, and I'm quoting, presented had to be fraudulent because Mr. Sutherland's books and records did not consistently treat the STS transfers as loans. And the only explanation for those inconsistencies was that Mr. Sutherland couldn't keep his own lies in order. Philip's testimony will go directly to the inconsistencies in the books and records. The government made the argument that those inconsistencies established How does that affect documents that were fraudulent? They were backdated. They had questionable signatures on them. They had unbelievable interest rates in them. I'm still not seeing what the nexus is of their testimony to the fact of fraud. The loan documents And you've never proffered what that was. The loan documents, the records shows, were between STS, which was owned by Beverly, and Mr. Sutherland. These were insider companies, a brother and a sister. And when you look at the loan documents, they're literally a page long. They're identical in most respects. And it's clear that this is a loan between family members. Mr. Sutherland was, as the evidence showed, having problems paying his bills. He had a huge credit card debt. So the fact that they don't look like loan documents that you would see from a billion dollar company does not mean they're fraudulent. And they don't have a witness. And they're admitting they don't have a witness to establish that those documents were fabricated. They used innuendo and inference. And they beat up on Beverly to establish that the loan documents were fabricated. So again, just because the loan documents' terms sometimes did not make sense does not mean they're fraudulent. And again, the government used The jury considered all of that and found against your client. So the question now is we have an obstruction conviction. You're coming in to set it aside because counsel was ineffective because they didn't call two additional witnesses. And you keep dodging the fact is what would Phillip say that would show that those documents were not shams with the jury found. And what would the tax lawyer, I mean the tax lawyer knew even less. She did testify. I'm not avoiding the issue. I think that it's the manner in which the government presented their case. And they argued that the books and records of and the failure of the books and records to treat the STS transfers accurately was evidence of the fraudulent nature of the loan documents. And Phillip's testimony will rebut that. And again, there is no evidence. The government wasn't able to produce evidence that the documents, the metadata, for example, that the documents were forged. And the other point is, again, that the loan documents were prepared between siblings. And it may have been that somebody else signed the loan documents, but that doesn't make them fraudulent. And the fact that there were loans is evidence that the loan documents were not fabricated. And had the trial counsel brought evidence that they clearly had to show the legitimacy of the loans, it supported the legitimacy of the loan documents. And there's one aspect of the expert's opinion that went directly to the legitimacy of the loans, which again would go to the legitimacy of the loan documents. And that was that half of the funds that are at issue in this case came from a line of credit and not from commissions and fees of STS that was argued by the government at trial. Yeah, I think you said to answer the question, Judge Nima's question, I think twice you did. And that is, you know, I've tried a lot of criminal cases in my private practice. When a jury, they use that sense that, well, to show that we're right about our theory that this was all wrong, inconsistent through his bookkeeping and how it was treated. That's what he would have been able to do. Those things are very important to a jury. I'm sure that the government wouldn't waste their time with making that the icing on the cake. We don't have to just rely on just these two people right here. Look at the bookkeeping itself. It can consistently charge this one time and that another time. That would be very important to the jury. No, it's my fault, my culprit. That's what I'm saying. I was bookkeeping. I missed. That's very important to a case like that. It's up to the appellate court to say that, oh, no, that wasn't it at all. The jurors look at a lot of things, and that's important, and the government did a good job in pointing out that in terms of this consistent bookkeeping. Bookkeeping was a big part of this case. It wasn't just a piece of paper. It wasn't just called something alone. They said, no, it's consistent. It's a pattern, and patterns always normally make a difference when we look at evidence in terms of being sufficient. And that's not sufficient at all for somebody to come and counter that with a witness. So I think you did answer the question. I see my time is up. Okay. Thank you. Thank you. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Roger L. Gregory, G. Steven Agee